```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
UNITED STATES OF AMERICA,                      :
                                               :
           v.                                  :     MEMORANDUM & ORDER
                                               :     18-CR-337-2 (WFK)
VITO DIFALCO,                                  :
                                               :
                        Defendant.             :
-------------------------------------------------------------X
```

**WILLIAM F. KUNTZ, II, United States District Judge:** On March 18, 2019, Vito Difalco ("Defendant") pled guilty to Count One of the Superseding Indictment. The Court now sentences him and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Defendant is hereby sentenced to 37 months of incarceration, 3 years of supervised release, and a $100 mandatory special assessment.

## BACKGROUND

On August 1, 2018, the Government filed a 34-count Superseding Indictment. Superseding Indictment, ECF No. 48. On March 18, 2019, Defendant pled guilty to Count One of the Superseding Indictment, charging Defendant with Racketeering, in violation of Title 18, United States Code, Section 1962(c), pursuant to a plea agreement. ECF Nos. 149, 150 ("Plea Agreement").

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

### I.  Legal Standard

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in

open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing or varying "in a statement of reasons form." *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

## II.   Analysis

### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant was born on August 13, 1952 in Brooklyn, New York, to the marital union of George Difalco and Santa Vinico, both of whom are deceased. Presentence Investigation Report ¶ 207, ECF No. 181 ("PSR"). Defendant has two siblings. *Id.* ¶ 208. John Difalco, Defendant's twin brother, resides in Brooklyn, is a retired warehouse employee and is married with one child. *Id.* Phyllis Wiley, Defendant's sister, resides in Glen Rock, New Jersey, is a retired nurse coordinator, and is married with three children. *Id.* Defendant was raised in a low-income household by his parents and has always had a strong relationship with both his siblings. *Id.* ¶ 209.

Defendant married Mary Difalco, nee Barrafato, on February 14, 1998. *Id.* ¶ 210. The couple separated in 2007 and legally divorced in 2008. *Id.* The couple maintained an amicable relationship and plan to get remarried as the instant offense has brought them back together. *Id.* Ms. Difalco describes Defendant as a "good-hearted, wonderful man." *Id.* ¶ 211; Def.'s Ltrs. at 4, ECF No. 235-1. The marriage produced one child, Brittany Rose Difalco, age 26. PSR ¶ 210. Defendant's daughter resides in Staten Island, New York and is employed as a sociologist. *Id.* In her letter of support, Defendant's daughter states the family has "never gone without . . . not because of finances, but the amount of empathy and care my father holds." Def.'s Ltrs. at 3. Mary Difalco also has a daughter from a prior relationship, Desiree George, age 39, who is married with three children. PSR ¶ 210. Ms. George describes Defendant as a "loving and caring step-father." Def.'s Ltrs. at 5.

Defendant left his parents' house in Brooklyn around 1991 and moved to New Jersey. PSR ¶ 213. He then moved to Staten Island with Ms. Difalco. *Id.* ¶ 225. In 2001, Defendant moved to Brooklyn and has since resided alone in various apartments throughout Brooklyn and New Jersey. *Id.* Defendant has remained in custody since his arrest on July 11, 2018. *Id.* ¶ 225. According the Bureau of Prisons' SENTRY system, Defendant has no disciplinary history, while in custody for the instant offense. *Id.* ¶ 214.

Defendant suffers from a series of health issues including arthritis in his fingertips and lower back, high blood pressure and heart failure, bilateral knee osteoarthritis, osteopenia, subchondral bone cyst, subchondral sclerosis, tricompartmental osteoarthritic marginal osteophyte formation, multiple distal interphalangeal joints in both hands, and dextroscoliosis. PSR ¶ 216; PSR Addendum at 1, ECF No. 236. Additionally, in November 2019, while in

custody, Defendant fell and hit his face causing bruising, minor abrasions, and rib fractures. PSR Addendum at 1.

Defendant reported no past or current mental health or substance abuse issues. PSR ¶¶ 219–20. Defendant graduated high school in 1971 and briefly attended college, before leaving to begin working. *Id.* ¶¶ 222–23. In 1997, Defendant enrolled in a night school program, which he did not complete. *Id.* ¶ 221. Prior to his arrest for the instant offense, Defendant worked as a custodian and foreman for the New York City Board of Education and owned Tryst Lounge, a bar in Brooklyn, New York. *Id.* ¶¶ 226–28. Frank Zapata, Defendant's boss for fifteen years with the N.Y.C. Board of Education, wrote "Victor does outstanding work and he also works well unsupervised. Additionally, I know him to take great care of his family at all times . . . he is well liked by all in the community, especially at Local 32BJ. In fact, I would put him back to work immediately if I could." Def. Ltrs. at 8.

Defendant was a soldier and associate of the Colombo crime family of La Cosa Nostra, an organized crime group operating in the Eastern District of New York and elsewhere. PSR ¶¶ 10, 21. For more than a year, Defendant and his co-defendant Joseph Maratea operated a loansharking business, through which he extended loans at exorbitant rates of interest under the threat of bodily harm if debtors did not make timely payments. *Id.* ¶¶ 30, 60. Specifically, Defendant charged $15 in weekly interest payments on every $500 extended, amounting to 156% annual interest. *Id.* ¶ 30. Defendant repeatedly called debtors who had missed payments, conducted surveillance outside their homes, and expressed a willingness to engage in violence to further the business. *Id.* ¶¶ 32–46. For example, on April 25, 2018 at 7:48 a.m., Defendant called a debtor and left a message, "[Nickname for John Doe #8], scum bag. You're gonna make it so I make your uncle Dominic hate you. 'Cause your just a fuckin' lice. Then I'm gonna grab

4

this kid fuckin' Peter.  He brought me to you, and I'm gonna make him punish you while I'm punishing you."  Gov't Sentencing Mem. at 5, ECF No. 237 ("Gov't Mem.").

Defendant also directed an illegal gambling venture with a co-defendant between January 2018 and May 2018.  PSR ¶ 58.  Taking place primarily at Defendant's bar in Brooklyn or co-defendant's pawn shop in Brooklyn, the venture included sports betting and bookmaking, a Super Bowl pool policy scheme, March Madness pool policy scheme, and video gambling machines.  *Id.*

Defendant was arraigned on the complaint on July 11, 2018.  ECF No. 16.  Defendant was arraigned on the Superseding Indictment on August 7, 2018.  ECF No. 50.  On March 18, 2019, Defendant pled guilty to Count One of the Superseding Indictment, Racketeering in violation of 18 U.S.C. § 1962.  Plea Agreement ¶ 1.  Defendant has been in custody since his arrest on July 11, 2018.  PSR at 1.

### B.  The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's offense and punishes Defendant accordingly.  It seeks to deter Defendant from further criminal activity, from disregarding U.S. law, and from engaging in illicit activity.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pled guilty to Count One of the Superseding Indictment charging him with Racketeering in violation of 18 U.S.C. § 1962. Within Count One, Defendant admitted to his participation in the extortionate collection of credit from the individual identified in the Superseding Indictment as John Doe #8 (as alleged in Racketeering Act 12D) and the extortionate collection of credit from the individual identified in the Superseding Indictment as John Doe #9 (as alleged in Racketeering Act 13D). Plea Agreement ¶ 1; PSR ¶ 1.

By statute, Defendant faces a maximum term of imprisonment of twenty years and a maximum term of supervised release of three years. 18 U.S.C. §§ 1963(a), 3583(b)(2). Defendant also faces a maximum fine of $250,000.00 or twice the gross gain or twice the gross loss of the enterprise, *id.* § 3571(b), and a mandatory special assessment of $100.00, *id.* § 3013. Defendant may be sentenced to a term of probation of not less than one year nor more than five years. *Id.* § 3561(c)(1). One of the following must be imposed as a condition of probation unless extraordinary circumstances exist: a fine, restitution, or community service. *Id.* § 3563(a)(2).

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" *Id.* § 3553(a)(4)(A).

For a violation of 18 U.S.C. § 1962(c), the applicable Guideline is USSG § 2E1.1(a), which states the underlying racketeering activity determines the base offense level. United

6

States Sentencing Commission, Guidelines Manual ("USSG") § 2E1.1. The commentary to Guideline § 2E1.1 states, "[w]here there is more than one underlying offense, treat each underlying offense as if contained in a separate count of conviction for the purpose of subsection (a)(2)." Application Note 1. The Government advised it can prove by a preponderance of the evidence that although not convicted on the activity, Defendant was involved in additional Racketeering Acts 4, 6, 10, 11, and 14 through 21 charged in Count 1 of the Superseding Indictment. PSR ¶ 6, 123. Per *United States v. Ruggiero*, all racketeering activity in furtherance of the racketeering enterprise, charged and uncharged, must be taken into consideration for Guideline purposes, as it is considered relevant conduct to the racketeering charges. 100 F.3d 284, 290–91 (2d Cir. 1996).

      Under the Guidelines, Count 1 Racketeering Acts 4 and 6 are grouped together per USSG § 3D1.2(b). All parties agree the applicable Guideline for these charges is USSG § 2E2.1(a) which provides a base offense level of 20. PSR ¶ 192, Gov't Mem. at 6–7, Def. Sentencing Mem. at 7, ECF No. 235 ("Def. Mem."). Acts 18 through 21 are also grouped together per USSG § 3D1.2(b). All parties agree the applicable Guideline for these charges is USSG § 2E3.1(a)(2)(A) which provides a base offense level of 12. PSR ¶ 192, Gov't Mem. at 7, Def. Mem. at 7. Racketeering Acts 10, 11, 12D, 13D, 14, 15, 16, and 17 cannot be grouped with any other acts per the grouping guidelines of USSG § 3D1.2. All parties agree the applicable Guideline for these charges is USSG § 2E2.1(a) which provides a base offense level of 20. PSR ¶ 192, Gov't Mem. at 6–7, Def. Mem. at 7.

      The greatest of the adjusted offense levels under the multiple racketeering act analysis is 20. USSG § 3D1.4. All parties agree pursuant to USSG § 3D1.4(a), (b) and (c), because there were multiple acts of racketeering and the number of units assigned to the racketeering offense is

more than five, the offense level is increased by five levels (+5). USSG § 3D1.4. The resulting Combined Adjusted Offense Level is twenty-five (25).

Defendant has clearly demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels (2). *Id.* § 3E1.1(a). Because the Government was notified in a timely manner of Defendant's intention to enter a plea of guilty, the offense level is decreased by one (1) additional level. *Id.* § 3E1.1(b). The Government and Defendant further decrease Defendant's offense level by one (1) applying the global plea reduction noted in the plea agreement. Gov't Mem. at 8; Def. Mem. at 7. This results in a total offense level of 21. Gov't Mem at 8; Def. Mem. at 7. Probation agrees if the Court grants the global plea reduction agreed to by the parties in the plea agreement, the total offense level would be reduced to 21, resulting in a Guidelines range of 37 to 46 months. PSR ¶ 251.

A total offense level of 21 and a criminal history category of one (I) yields a Guidelines term of imprisonment range of 37 to 46 months. USSG Ch. 5, Part A. The Guidelines further recommend a maximum term of supervised release between one and three years, *id.* § 5D1.2(a)(2), and a fine of between $15,000.00 and $150,000.00, *id.* § 5E1.2(c)(3). The Guidelines advise Defendant is ineligible for probation. *Id.* § 5B1.1 n.2.

Probation recommends a sentence of 37 months in custody and 3 years supervised release with special conditions. *See* U.S. Probation Dep't Sentence Recommendation at 1, ECF No. 181-1. The Government requests a sentence within the Guidelines range of 37 to 46 months. Gov't Mem. at 10. Defense counsel requests a sentence of time served. Def. Mem. at 3, ECF No. 235.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5). This factor is not relevant to Defendant's sentencing.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a)(7). Restitution shall be ordered in this case. 18 U.S.C. § 3663. However, the Government has not yet provided the losses the victims may have suffered. PSR ¶ 59. At an appropriate time, the Court will resolve the outstanding restitution requirement.

## CONCLUSION

A sentence of 37 months of incarceration, 3 years of supervised release, and a $100 mandatory special assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report and the addenda thereto, barring any errors contained therein, to the extent they are not inconsistent with this opinion.

**SO ORDERED.**

_s/ WFK_____
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: August 5, 2020
       Brooklyn, New York